FILED
2020 Jul-10  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

# ALABAMA SJIS CASE DETAIL

**PREPARED FOR: PATTI GROVE**



County: **20**     Case Number: **CV-2020-900129.00**     Court Action:
Style: **FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION**

**Real Time**

## Case

### Case Information

| | | | |
|---|---|---|---|
| County: | **20-COLBERT** | Case Number: | **CV-2020-900129.00** | Judge: | **JMH:JACQUELINE M. HATCHER** |
| Style: | **FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION** |
| Filed: | **05/26/2020** | Case Status: | **ACTIVE** | Case Type: | **CONTRACT/EJMNT/SEIZU** |
| Trial Type: | **JURY** | Track: | | Appellate Case: | **0** |
| No of Plaintiffs: | **1** | No of Defendants: | **1** |

### Damages

| | | | |
|---|---|---|---|
| Damage Amt: | **0.00** | Punitive Damages: | **0.00** | General Damages: | **0.00** |
| No Damages: | | Compensatory Damages: | **0.00** | |
| Pay To: | | Payment Frequency: | | Cost Paid By: |

### Court Action

| | | | |
|---|---|---|---|
| Court Action Code: | | Court Action Desc: | | Court Action Date: |
| Num of Trial days: | **0** | Num of Liens: | **0** | Judgment For: |
| Dispositon Date of Appeal: | | Disposition Judge: | : | Disposition Type: |
| Revised Judgement Date: | | Minstral: | | Appeal Date: |
| Date Trial Began but No Verdict (TBNV1): |
| Date Trial Began but No Verdict (TBNV2): |

### Comments

Comment 1:
Comment 2:

### Appeal Information

| | | |
|---|---|---|
| Appeal Date: | | Appeal Case Number: | | Appeal Court: |
| Appeal Status: | | Orgin Of Appeal: | |
| Appeal To: | | Appeal To Desc: | | LowerCourt Appeal Date: |
| Disposition Date Of Appeal: | | Disposition Type Of Appeal: |

### Administrative Information

| | | |
|---|---|---|
| Transfer to Admin Doc Date: | | Transfer Reason: | | Transfer Desc: |
| Number of Subponeas: | | Last Update: | **05/26/2020** | Updated By: | **AJA** |

## Parties

### Party 1 - Plaintiff BUSINESS - FAME ENTERPRISES, INC.

#### Party Information

| | | | |
|---|---|---|---|
| Party: | **C001-Plaintiff** | Name: | **FAME ENTERPRISES, INC.** | Type: | **B-BUSINESS** |
| Index: | **D ATLANTIC REC** | Alt Name: | | Hardship: | **No** | JID: | **JMH** |
| Address 1: | **201 SOUTH COURT STREET** | | | Phone: | **(256) 000-0000** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Address 2: | **SUITE 320** | | | | | |
| City: | **FLORENCE** | State: | **AL** | Zip: | **35630-0000** | Country: **US** |
| SSN: | **XXX-XX-X999** | DOB: | | Sex: | | Race: |

## Court Action

| | | | |
|---|---|---|---|
| Court Action: | | | Court Action Date: |
| Amount of Judgement: **$0.00** | | Court Action For: | Exemptions: |
| Cost Against Party: **$0.00** | | Other Cost: **$0.00** | Date Satisfied: |
| Comment: | | | Arrest Date: |
| Warrant Action Date: | | Warrant Action Status: | Status Description: |

## Service Information

| | | | |
|---|---|---|---|
| Issued: | Issued Type: | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: | Service Type | Service On: | Served By: |
| Answer: | Answer Type: | Notice of No Service: | Notice of No Answer: |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|---|---|---|---|---|---|
| Attorney 1 | HAL043 | | HALL GREGORY RICK | RHALL@HALLTANNER.COM | (256) 381-7750 |
| Attorney 2 | TAN004 | | TANNER JAMES MICHAEL | MTANNER@HALLTANNER.COM | (256) 381-7750 |
| Attorney 3 | HAR278 | | HARGETT DOUGLAS BARKLEY | DHARGETT@HALLTANNER.COM | (256) 381-7750 |

### Party 2 - Defendant BUSINESS - ATLANTIC RECORDING CORPORATION

## Party Information

| | | | | | |
|---|---|---|---|---|---|
| Party: | **D001-Defendant** | Name: | **ATLANTIC RECORDING CORPORATION** | | Type: **B-BUSINESS** |
| Index: | **C FAME ENTERPR** | Alt Name: | | Hardship: **No** | JID: **JMH** |
| Address 1: | **C/O CT CORPORATION SYSTEM** | | | Phone: **(256) 000-0000** | |
| Address 2: | **28 LIBERTY STREET** | | | | |
| City: | **NEW YORK** | State: **NY** | Zip: **10005-0000** | Country: **US** |
| SSN: | **XXX-XX-X999** | DOB: | Sex: | Race: |

## Court Action

| | | | |
|---|---|---|---|
| Court Action: | | | Court Action Date: |
| Amount of Judgement: **$0.00** | | Court Action For: | Exemptions: |
| Cost Against Party: **$0.00** | | Other Cost: **$0.00** | Date Satisfied: |
| Comment: | | | Arrest Date: |
| Warrant Action Date: | | Warrant Action Status: | Status Description: |

## Service Information

| | | | |
|---|---|---|---|
| Issued: **05/26/2020** | Issued Type: **C-CERTIFIED MAIL** | Reissue: | Reissue Type: |
| Return: | Return Type: | Return: | Return Type: |
| Served: **06/10/2020** | Service Type **C-CERTIFIED MAIL** | Service On: | Served By: |
| Answer: | Answer Type: | Notice of No Service: | Notice of No Answer: |

## Attorneys

| Number | Attorney Code | Type of Counsel | Name | Email | Phone |
|--------|---------------|-----------------|------|-------|-------|
| Attorney 1 | 000000 | | PRO SE | | |

## Financial

### Fee Sheet

| Fee Status | Admin Fee | Fee Code | Payor | Payee | Amount Due | Amount Paid | Balance | Amount Hold | Garnish Party |
|------------|-----------|----------|-------|-------|------------|-------------|---------|-------------|---------------|
| ACTIVE | N | AOCC | C001 | 000 | $8.40 | $8.40 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CONV | C001 | 000 | $0.00 | $18.51 | $0.00 | $0.00 | 0 |
| ACTIVE | N | CV05 | C001 | 000 | $308.00 | $308.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | JDMD | C001 | 000 | $100.00 | $100.00 | $0.00 | $0.00 | 0 |
| ACTIVE | N | VADM | C001 | 000 | $45.00 | $45.00 | $0.00 | $0.00 | 0 |
| | | | | **Total:** | $461.40 | $479.91 | -$18.51 | $0.00 | |

### Financial History

| Transaction Date | Description | Disbursement Accoun | Transaction Batch | Receipt Number | Amount | From Party | To Party | Money Type | Admin Fee | Reason | Attorney | Operator |
|------------------|-------------|---------------------|-------------------|----------------|--------|------------|----------|------------|-----------|--------|----------|----------|
| 06/02/2020 | CREDIT | CONV | 2020168 | 1971040 | $18.51 | C001 | 000 | | N | | | JOT |
| 06/02/2020 | RECEIPT | AOCC | 2020168 | 1971030 | $8.40 | C001 | 000 | | N | | | JOT |
| 06/02/2020 | RECEIPT | CV05 | 2020168 | 1971050 | $308.00 | C001 | 000 | | N | | | JOT |
| 06/02/2020 | RECEIPT | JDMD | 2020168 | 1971060 | $100.00 | C001 | 000 | | N | | | JOT |
| 06/02/2020 | RECEIPT | VADM | 2020168 | 1971070 | $45.00 | C001 | 000 | | N | | | JOT |

## Case Action Summary

| Date: | Time | Code | Comments | Operator |
|-------|------|------|----------|----------|
| 5/26/2020 | 12:37 PM | FILE | FILED THIS DATE: 05/26/2020          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | EORD | E-ORDER FLAG SET TO "Y"          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | ASSJ | ASSIGNED TO JUDGE: JACQUELINE M. HATCHER     (AV01) | AJA |
| 5/26/2020 | 12:37 PM | SCAN | CASE SCANNED STATUS SET TO: N          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | TDMJ | JURY TRIAL REQUESTED          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | STAT | CASE ASSIGNED STATUS OF: ACTIVE          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | ORIG | ORIGIN: INITIAL FILING          (AV01) | AJA |
| 5/26/2020 | 12:37 PM | C001 | C001 PARTY ADDED: FAME ENTERPRISES, INC.   (AV02) | AJA |
| 5/26/2020 | 12:37 PM | C001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/26/2020 | 12:37 PM | C001 | LISTED AS ATTORNEY FOR C001: HALL GREGORY RICK | AJA |
| 5/26/2020 | 12:37 PM | C001 | LISTED AS ATTORNEY FOR C001: HARGETT DOUGLAS BARK | AJA |
| 5/26/2020 | 12:37 PM | C001 | LISTED AS ATTORNEY FOR C001: TANNER JAMES MICHAEL | AJA |
| 5/26/2020 | 12:37 PM | C001 | C001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/26/2020 | 12:37 PM | D001 | D001 PARTY ADDED: ATLANTIC RECORDING CORPORATION | AJA |
| 5/26/2020 | 12:37 PM | D001 | CERTIFIED MAI ISSUED: 05/26/2020 TO D001   (AV02) | AJA |
| 5/26/2020 | 12:37 PM | D001 | LISTED AS ATTORNEY FOR D001: PRO SE          (AV02) | AJA |
| 5/26/2020 | 12:37 PM | D001 | D001 E-ORDER FLAG SET TO "Y"          (AV02) | AJA |
| 5/26/2020 | 12:37 PM | D001 | INDIGENT FLAG SET TO: N          (AV02) | AJA |
| 5/26/2020 | 12:38 PM | ECOMP | COMPLAINT E-FILED. | HAL043 |
| 5/27/2020 | 1:10 PM | ESCAN | SCAN - FILED 5/27/2020 - RETURN RECEIPT | BLG |
| 6/15/2020 | 1:20 PM | D001 | SERVICE OF CERTIFIED MAI ON 06/10/2020 FOR D001 | BLG |
| 6/15/2020 | 1:22 PM | ESERC | SERVICE RETURN | BLG |

## Images

| Date: | Doc# | Title | Description | Pages |
|---|---|---|---|---|
| 5/26/2020 12:38:57 PM | 1 | CIVIL_COVER_SHEET | CIRCUIT COURT - CIVIL CASE | 1 |
| 5/26/2020 12:38:57 PM | 2 | COMPLAINT | | 11 |
| 5/26/2020 12:38:57 PM | 3 | SUPPORTING DOCUMENT | Exhibit 1 | 13 |
| 5/26/2020 12:38:58 PM | 4 | SUPPORTING DOCUMENT | Exhibit 2 | 2 |
| 5/26/2020 12:39:15 PM | 5 | COMPLAINT - TRANSMITTAL | E-NOTICE TRANSMITTALS | 2 |
| 5/26/2020 12:39:15 PM | 6 | COMPLAINT - SUMMONS | E-NOTICE TRANSMITTALS | 1 |
| 5/27/2020 1:10:28 PM | 7 | RETURN RECEIPT | | 1 |
| 6/15/2020 1:22:29 PM | 9 | SERVICE RETURN - TRANSMITTAL | E-NOTICE TRANSMITTALS | 3 |
| 6/15/2020 1:22:26 PM | 8 | SERVICE RETURN | SERVICE RETURN | 2 |

 *END OF THE REPORT*

ELECTRONICALLY FILED
5/26/2020 12:38 PM
20-CV-2020-900129.00
CIRCUIT COURT OF
COLBERT COUNTY, ALABAMA
MARK R. EADY, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>20<br><br>Date of Filing:<br>05/26/2020 | Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA
### FAME ENTERPRISES, INC. v. ATLANTIC RECORDING CORPORATION

**First Plaintiff:** ☑ Business   ☐ Individual   ☐ Government   ☐ Other

**First Defendant:** ☑ Business   ☐ Individual   ☐ Government   ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other:_____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING     A ☐ APPEAL FROM DISTRICT COURT     O ☐ OTHER

R ☐ REMANDED     T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO     **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

| HAL043 | 5/26/2020 12:38:56 PM | /s/ G RICK HALL |
| | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**   ☐ YES ☑ NO   ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**   ☐ YES ☑ NO

ELECTRONICALLY FILED
5/26/2020 12:38 PM
20-CV-2020-900129.00
CIRCUIT COURT OF
COLBERT COUNTY, ALABAMA
MARK R. EADY, CLERK

## IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

**FAME ENTERPRISES, INC.**

       **Plaintiff,**

**v.**

     **CIVIL ACTION NO.:**

**ATLANTIC RECORDING**
**CORPORATION.**

     **CV-2020-_____**

       **Defendant.**

## COMPLAINT

Plaintiff Fame Enterprises, Inc. f/k/a Fame Productions, Inc. ("Fame"), with its principal place of business at 603 East Avalon Avenue, Muscle Shoals, Alabama, by and through its attorneys, Hall, Tanner & Hargett, P.C., as and for its Complaint against defendant Atlantic Recording Corporation ("Atlantic"), hereby alleges and avers as follows:

1.      Fame, the celebrated recording studio, record label and production company that has become synonymous with the "Muscle Shoals Sound" of R&B and soul music, brings this action to vindicate its contractual right to repurchase from Atlantic certain master recordings embodying performances by the legendary blues and soul singer/songwriter Clarence Carter ("Carter"). Pursuant to a 1969 record distribution agreement between Fame and Atlantic, Fame transferred to Atlantic certain rights in the Carter master recordings for distribution and other exploitation, in consideration of Atlantic's agreement to pay specified royalties and satisfy other contractual obligations to Fame. Pursuant to the parties' written agreement, following certain specified triggering events - - which have occurred - - Fame is contractually entitled to repurchase the rights in the Carter masters from Atlantic for nominal consideration. Fame has properly

exercised those repurchase rights in strict conformance with the parties' agreement, but Atlantic refuses to return and relinquish its rights in the Carter master recordings to Fame, in breach of that agreement.

**PARTIES**

2.     Plaintiff Fame is a corporation organized under the laws of the State of Alabama with its principal place of business in Muscle Shoals, Alabama.  Since its inception in the late 1950s, Fame has acted as recording studio, producer and/or record label for a diverse roster of iconic recording artists, including - - in addition to Carter - - Aretha Franklin, Otis Redding, Etta James, Wilson Pickett, the Osmonds, Mac Davis and Paul Anka.

3.     Defendant Atlantic is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.  Atlantic is a so-called "major record label," with highly developed and far-reaching distribution channels and has, since 1967, been a part of the Warner Music Group.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
ATLANTIC'S HISTORY IN MUSCLE SHOALS LEADING
TO THE 1969 DISTRUBTION AGREEMENT**

4.     In or about 1966, Carter signed an exclusive recording agreement with Fame. Pursuant to that agreement, Carter made a number of soul and rhythm and blues recordings, produced and initially exploited by Fame, including (among many others) his seminal works "Slip Away" and "Making Love at the Dark End of the Street."  These recordings were initially released on Fame's record label, but as part of the expanding relationship between Fame and Atlantic, and more generally between Atlantic and the developing Muscle Shoals Sound, these recordings were distributed by Atlantic.

5.      Fame and Atlantic's relationship began in or about early 1966, when Fame's founder and Muscle Shoals resident Rick Hall heard a locally produced recording performed by Colbert County resident Percy Sledge, "When a Man Loves a Woman."  Hall immediately contacted Atlantic's Jerry Wexler (who signed the Agreement at issue in this action for Atlantic), following up on an overture from Wexler that Hall should contact Wexler if Hall heard a hit record. Atlantic distributed "When a Man Loves a Woman," which became Atlantic's first gold record, raising Hall's status with Wexler.

6.      Thereafter, in 1966 Atlantic sent Alabama native Wilson Pickett to record at Fame, where during the first sessions three iconic million selling R & B recordings were made, "Mustang Sally," "Land of a Thousand Dances," and "Funky Broadway."  Pickett returned to Fame in 1968 and again in 1969, still as an Atlantic artist, for sessions in which other classic records were made, including a cover of the Beatles' "Hey Jude" featuring guitarist Duane Allman, and heralded by many as the birth of Southern Rock.

7.      Meanwhile, in early 1967, Atlantic brought to Muscle Shoals its newly signed artist Aretha Franklin after she had spent five years as a Columbia artist with little to no commercial success.  The first record recorded in this session, at Fame's recording studio, was "I Never Loved a Man (The Way I Love You)," which became Franklin's first hit recording.

8.      These successes lead Atlantic's Wexler to publicly state that the Muscle Shoals area had become his favorite place to record.  Indeed, Atlantic assisted the Fame rhythm section, now known as the Swampers, in establishing their own separate recording studio in Colbert County.

9.      Capitalizing on the Atlantic's successes with Fame-produced recordings, and desiring to expand the reach and popularity of Carter's recordings through Atlantic's global distribution channels, and believing that Carter's records would be more marketable if issued on

Atlantic's  record label, on or about March 20, 1969, Fame entered into an agreement with Atlantic ("the Agreement") pursuant to which Fame "grant[ed] to Atlantic the exclusive rights to services and performances of [Carter] for phonograph record purposes during the term" of the Agreement and "all extensions and renewals" thereof.  A true and correct copy of the Agreement is attached hereto as Exhibit 1.   Carter was an Alabama resident at the time Atlantic entered into the Agreement and at relevant times thereafter.

10.     The term of the Agreement was one year and was subject to automatic renewal for four additional one-year periods in the absence of written notice of termination from Atlantic.

11.     Pursuant to the Agreement, Fame was required to produce and deliver to Atlantic between 24 and 36 "master recordings embodying [Carter's] performance" (the "Carter Masters") during each contract year compromising the Agreement's term.

12.     Nearly all aspects of the Agreement were focused upon Fame's creative operations in Muscle Shoals, Alabama.  As noted above, Fame granted to Atlantic during the term of the Agreement Fame's rights under its contract with Carter for Carter's exclusive services as a recording artist.  This underlying exclusive contract with Carter was entered into in Alabama, between two Alabama citizens and was to be, and in fact was, fully performed in Alabama at Fame's recording studio in Muscle Shoals, Alabama.  All the Carter Masters made pursuant to the Agreement were contractually contemplated to be, and in fact were, produced by Hall at Fame's studio in Muscle Shoals.

13.     Under the Agreement, contractual notices to Fame and Carter were required to be sent to Fame's address in Muscle Shoals, Alabama, and Fame was obligated to pay all recording costs regarding the Carter Masters, which the parties contemplated would be, and in fact were, made in Alabama at Fame's studio and offices in Muscle Shoals.

4

14.     The Agreement provides for the sale and transfer to Atlantic of all rights to recordings constituting the Carter Masters, subject to the terms and conditions of the Agreement, including those set forth in Exhibit A to the Agreement.  As was customary at the time, the Agreement contemplated both Fame's transfer of rights in the Carter Masters and the physical delivery of those master recordings to Atlantic from Alabama.

15.     Exhibit A of the Agreement provides Fame with the explicit right, described in further detail below, to repurchase the Carter Masters, on the terms and conditions stated therein.

16.     In exchange for Fame's transfer of rights in the Carter Masters to Atlantic - - albeit revocable at Fame's election - - Atlantic agreed, *inter alia*, to pay to Fame specified royalties and other amounts collected by Atlantic in connection with its distribution and other exploitations of the Carter Masters.  These payments were to be, and in fact were, sent by Atlantic to Fame's Muscle Shoals address, and all royalty statements likewise were to be, and in fact were, sent to that address.

### FAME'S REPURCHASE RIGHT

17.     Consistent with the revocable nature of Fame's transfer of rights in the Carter Masters to Atlantic, Exhibit A to the Agreement includes an express contractual mechanism by which Fame can repurchase those rights following the occurrence of certain identified events (the "Repurchase Right").

18.     Specifically, Fame's Repurchase Right is set forth in paragraph 5 of Exhibit A, which provides:

> "Anything to the contrary herein contained notwithstanding, [Fame] shall have the right to repurchase from [Atlantic] each of the master recordings delivered to [Atlantic] on Clarence Carter in the following manner and subject to the following terms and conditions:

(a) [Fame] shall have the right to repurchase with respect to any given master two years after the initial release thereof or upon expiration of this agreement, whichever is later. . . .

(b) [Fame] shall exercise such right by giving [Atlantic] sixty (60) days prior written notice of [Fame's] election to exercise such right and by paying [Atlantic] the sum of one ($1.00) dollar per master."

## FAME EXERCISES ITS REPURCHASE RIGHT

19.     On October 22, 2019, counsel for Fame sent a formal contractual notice to Atlantic and its affiliate, Rhino Entertainment Company, care of their counsel, by certified mail, return receipt requested, notifying those parties of Fame's "election to exercise [its] repurchase rights" under the Agreement (the "Repurchase Notice").

20.     Fame's counsel enclosed with the Repurchase Notice a list of the relevant master recordings covered by the repurchase (the "Repurchased Masters").  A copy of the list of Repurchased Masters is attached to this Complaint as Exhibit 2.

21.     The Repurchase Notice further confirmed that, by the terms of the Agreement, "the effective date of the repurchase will be sixty (60) days following the notice" - - *i.e.*, December 21, 2019.

22.     On November 18, 2019, Fame sent to Atlantic a check in the amount of $57.00, constituting the aggregate of the individual $1.00 purchase price for each of the Repurchased Masters.

## ATLANTIC'S REFUSAL TO COMPLY WITH
## FAME'S EXERCISE OF ITS REPURCHASE RIGHT

23.     By letter dated December 15, 2019, *i.e.*, less than one week prior to the effective date of the repurchase, counsel for defendant Atlantic responded to the Repurchase Notice by asserting, contrary to the express terms of the Agreement, that "Atlantic has no obligation to transfer to Fame ownership of the [Repurchased] Masters."

24.     In its December 15, 2019 letter, Atlantic also confirmed - - again contrary to the provisions of the Agreement - - that it "expressly rejects" Fame's payment of the $1-per-master repurchase price and "will return the check" to Fame.

25.     In the December 15, 2019 letter from its counsel, Atlantic averred, once again contrary to the Agreement, that Fame's "right . . . to repurchase the Masters expired over 40 years ago."

26.     In fact, the Agreement does not limit the time period within which Fame can exercise its Repurchase Right or provide for the expiration of that right, whether through the lapse of time or otherwise.  Rather, the Agreement provides that Fame "shall have the right to repurchase with respect to any given master two years after the initial release thereof or upon the expiration of this [A]greement, whichever is later."  By this provision, Fame's Repurchase Right arose on the latter of the two specified dates but did not expire thereafter.

27.     In the absence of a notice from Atlantic terminating the Agreement, the maximum term of the Agreement - - including four automatic one-year extensions - - was five years, *i.e.*, through on or about March 20, 1974.

28.     On or about September 15, 1972, Fame and Atlantic entered into an amendment to the Agreement (the "Amendment") that, *inter alia*, "effective immediately" released Fame of "all executory obligations to deliver to [Atlantic] master recordings" of Carter's performances. Notwithstanding that modification of the parties' contractual arrangement, the Amendment confirms that, "In all other respects said [A]greement is ratified and confirmed."  As such, the Amendment neither modified the Repurchase Right nor provided for its expiration or termination.

29.     On information and belief, the latest release date of any of the Repurchased Masters was in 1971.  Thus, pursuant to paragraph 5 of Exhibit A to the Agreement, Fame's Repurchase

Right with respect to each of those Masters first arose on or about March 20, 1974, when the Agreement expired according to its terms, as that date is more than two years after the latest release of the Repurchased Masters.

30.     By letter dated January 17, 2020, counsel for Fame responded to Atlantic's December 15, 2019 missive.  In its response, Fame rejected Atlantic's assertion that Fame's Repurchase Right had expired, "reconfirm[ed] [Fame's] October 22, 2019 notice of its election to repurchase the Carter masters, and, as the sixty-day contractual notice period has expired, demand[ed] Atlantic's immediate implementation of the transfer of the masters and all associated rights to Fame."

31.     Despite Fame's proper exercise of its Repurchase Rights, and its reconfirmation of that exercise in its January 17, 2020 letter, Atlantic has refused to transfer the Repurchased Masters to Fame or to relinquish its now terminated rights therein.

## COUNT ONE
### (Breach of Contract)

32.     Fame hereby repeats and incorporates all the foregoing allegations of this Complaint as if fully set forth herein.

33.     As set forth above, the Agreement grants to Fame the right to repurchase the Carter Masters upon notice to Atlantic and payment of $1 per Master.

34.     In full compliance with the Agreement, Fame provided Atlantic with the Repurchase Notice and proffered to Atlantic a check constituting payment of the $1 purchase price for each Repurchased Master.

35.     Fame otherwise performed all of its obligations under the Agreement, and is not in breach thereof.

36.     Atlantic breached the Agreement by failing to transfer the Repurchased Masters to Fame in accordance with the Agreement.

37.     As a result of Atlantic's aforesaid breach of the Agreement, Fame has been damaged in an amount to be determined at trial.

38.     In addition, because the Repurchased Masters are unique and irreplaceable, Atlantic should be ordered to specifically perform its obligation under the Agreement to transfer the rights in the Repurchased Masters to Fame in accordance with the Agreement in light of Fame's proper exercise of its Repurchase Right.

## COUNT TWO
### (Declaratory Judgment)

39.     Fame hereby repeats and incorporates all the foregoing allegations of this Complaint as if fully set forth herein.

40.     Fame provided Atlantic with the Repurchase Notice pursuant to paragraph 5 of Exhibit A to the Agreement, thereby exercising its Repurchase Right with respect to the Repurchased Masters.  Fame further paid to Atlantic the contractually required $1 per Repurchased Master.

41.     Atlantic rejected Fame's Repurchase Notice and its payment for the Repurchased Masters, and Atlantic has asserted that Fame's right to repurchase the Carter Masters under the Agreement has expired.

42.     Fame disputes Atlantic's assertion that Fame's Repurchase Right has expired and asserts that the Repurchase Right remains in full force and effect and that its Repurchase Notice was valid and effective.

43.    A justiciable controversy exists as to the effectiveness of Fame's Repurchase Notice and Atlantic's contractual obligation to transfer the rights in the Repurchased Masters to Fame.

44.    Fame seeks a judicial declaration from this Court, pursuant to Alabama Code § 6-6-220, *et seq.*, that its Repurchase Right under the Agreement did not expire; that Fame's Repurchase Notice and tender of the contractual purchase price was valid and effective; and that Atlantic is therefore obligated to transfer to Fame and otherwise relinquish the rights in the Repurchased Masters in accordance with the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, Plaintiff Fame Productions, Inc. respectfully requests that this Court enter judgment in its favor and against defendant Atlantic Recording Corporation, as follows:

A.  Determining that Atlantic has breached the parties' Agreement through its failure and refusal to transfer the Repurchased Masters to Fame.

B.  Entering a judicial declaration that Fame properly, validly and effectively exercised its Repurchase Right under paragraph 5 of Exhibit A to the Agreement; that Fame's Repurchase Right remains effective, and had not expired as of the date of Fame's Repurchase Notice; and that Atlantic is therefore obligated pursuant to the Agreement to transfer the rights in the Repurchased Masters to Fame in accordance with the Agreement.

C.  Ordering Atlantic forthwith to specifically perform its obligation under the Agreement to transfer the rights in the Repurchased Masters to Fame.

D.  Awarding Fame compensatory and consequential damages in an amount to be determined at trial, with interest as permitted and provided by law.

E.  Awarding Fame the attorneys' fees and costs incurred by Fame in connection with this action.

F.  Awarding such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by struck jury as to all claims asserted in the Complaint and which may be asserted in any subsequent amendment hereto.

Respectfully submitted this 26th day of May, 2020.

s/ G. Rick Hall
G. Rick Hall (HAL043)
E-mail: rhall@halltanner.com

s/ J. Michael Tanner
J. Michael Tanner (TAN004)
E-mail: mtanner@halltanner.com

s/ Douglas B. Hargett
Douglas B. Hargett (DBH278)
E-mail: dhargett@halltanner.com

**OF COUNSEL:**

**HALL | TANNER | HARGETT | P.C.**
201 South Court Street
Suite 320
Florence, AL 35630
T: (256) 381-7750
F: (256) 381-4449

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:**

**ATLANTIC RECORDING CORPORATION**
**C/O CT CORPORATION SYSTEM**
**28 LIBERTY STREET**
**NEW YORK, NEW YORK 10005**

11

ELECTRONICALLY FILED
5/26/2020 12:38 PM
20-CV-2020-900129.00
CIRCUIT COURT OF
COLBERT COUNTY, ALABAMA
MARK R. EADY, CLERK

# Exhibit 1

AGREEMENT made this 20th day of March ~~xxixxxxxyxxxfxfxfxbxxxxy~~ , 1969
by and between ATLANTIC RECORDING CORPORATION of 1841
Broadway, New York, N.Y., (hereinafter called "ATLANTIC"
and FAME PRODUCTIONS, INC., of 603 E. Avalon, Muscle Shoals,
Alabama, (hereinafter called "FAME").

W̲ ̲I̲ ̲T̲ ̲N̲ ̲E̲ ̲S̲ ̲S̲ ̲E̲ ̲T̲ ̲H̲ :

1. FAME warrants and represents that the artist
Clarence Carter (hereinafter called "the Artist") is under
exclusive contract to FAME as a recording artist and that
the Artist will continue to be under exclusive contract
to FAME for the term of this agreement and all extensions
and renewals hereof.  FAME agrees that it will not waive
or forfeit its exclusive rights to the services of the
Artist during the term of this agreement and all extensions
and renewals hereof without Atlantic's prior written consent
Any act in derogation of Atlantic's rights pursuant to
this agreement shall be null and void and shall convey no
right or title

2.  FAME hereby grants to Atlantic the exclusive
rights to services and performances of the Artist for
phonograph record purposes during the term hereof and
all extensions  and renewals hereof upon the terms and
conditions herein contained.

3.  The term of the agreement shall be for a
period of one year from the date hereof.  FAME  hereby
grants Atlantic four (4) successive exclusive options to
extend the term of this agreement for four (4) successive
one-year periods (all hereinafter referred to as "option
periods") upon all of the same terms and conditions as
apply during the initial one-year period hereof.  Each
such option shall be deemed to have been automatically
exercised  by Atlantic without notice to FAME unless
Atlantic has given FAME written notice at least 30 days

prior to the applicable anniversary date hereof advising
FAME of Atlantic's intention not to exercise the applicable
option.

4.   During the term of this agreement and any
extensions hereof, Atlantic shall have, and FAME hereby
grants—to Atlantic the exclusive rights to all master re-
cordings which embody the performances of the Artist upon
all of the terms and conditions contained in Exhibit "A"
annexed hereto and made a part hereof.  As used in Exhibit
"A", the term "seller" shall mean FAME and the term
"purchaser" shall mean Atlantic.

5.   (a)   during each contract year hereof FAME
agrees to cause Artist to record and FAME will produce
twenty-four master recordings embodying Artist's performance
At the written request of Atlantic and subject to Artist's
availability, FAME agrees to cause Artist to record an
additional twelve master recordings embodying the Artist's
performances during each contract year hereof.

(b)   FAME agrees to cause Artist to record
hereunder and to deliver master recordings to Atlantic at
such times as Atlantic may reasonably designate, subject to
Artist's reasonable prior commitments existing on the date
on which Atlantic advises FAME in writing of Atlantic's
requirements.  FAME shall deliver completed master tapes to
Atlantic in accordance with Atlantic's instructions.

(c)   should Artist for any reason fail to
render services or be unavailable for the rendering of
services hereunder or fail to record or be unavailable for
the recording of any record sides hereunder, or should FAME
fail to produce and deliver any master recordings to Atlanti
hereunder for any reason, then, in addition to any other
rights or remedies which Atlantic may have, the term of this
agreement shall automatically be suspended until the
required product is delivered; provided, however,

- 2 -

that such period of suspension shall not exceed sixty (60) days for each master recording which the Artist failed to or was unavailable to perform or FAME failed to produce and deliver;

6.   FAME agrees and warrants and represents that:

(a) during the term of this Agreement Artist will not perform for any other person, firm or corporation other than FAME and ATLANTIC for the purpose of making phonograph records;

(b)  Artist shall not perform any selections which Artist has performed hereunder for any person, firm or corporation other than Atlantic for the purpose of making phonograph records for a period of five (5) years from the date of recording; and

(c)  if, during the term of this Agreement, or any extension of such term, the Artist performs any composition for the purpose of making any recordings for any medium other than phonograph records, Artist will do so only pursuant to a written contract containing an express provision that neither such performances nor any recording thereof shall be used directly or indirectly for the purpose of making phonograph records.

7.   FAME shall pay and be solely responsible for payment of all cost of producing and recording all master records produced hereunder.  All recordings shall be produced by FAME in accordance with the rules and regulations of all unions having jurisdiction.

8.   The individual(s) who will be engaged as the producer(s) of recording sessions hereunder shall be mutually agreed upon by the parties, and neither party shall unreasonably withhold agreement thereto.  Rick Hall is hereby approved by Atlantic.

9.  It is agreed that the Artist's services for

-3-

the purpose of recording phonograph records hereunder are of a special, unique and extraordinary character. In the event of breach of any material term, condition or covenant of this Agreement by FAME or Artist, Atlantic shall be entitled to injunctive relief in addition to any other rights or remedies available to it.

10. (a) All notices hereunder shall be in writing and shall be sent by registered mail or prepaid telegram as follows:

DOCUMENT 3

| If to FAME: | To FAME at its address first above written. |
| If to Artist: | To Artist in care of FAME at its address first above written. |
| If to Atlantic: | To Atlantic at its address first above written, Att: Gerald Wexler with a copy to Legal department. |

(b) all statements to be rendered hereunder shall be sent to FAME at its address first above written or as otherwise directed;

(c) all payments hereunder shall be to the order of FAME and shall be sent to FAME at its address first above written or as FAME may otherwise from time to time direct;

(d) whereever in this Agreement FAMES' approval or consent is required, Atlantic may require FAME to formally give or withhold such approval or consent by giving FAME notice requesting same and by furnishing FAME with the information or material in respect of which such approval or consent is sought. FAME shall give Atlantic notice of approval or disapproval within ten (10) days after such notice is received by FAME. In the event of disapproval or no consent, the reasons therefor shall be stated. Failure to give such notice to Atlantic as aforesaid shall be deemed to be a consent or approval.

11. For the purposes of this Agreement, the following definitions shall apply:

Recording cost-all cost incurred in or incident to the recording of the Artist's performances including but

-4-

not limited to costs of musicians, singers, actors and producers, cost of arrangements, copying charges, cartage of musical instruments, studio technicians, tape, editing, dubbing and re-dubbing costs and expenses.

Phonograph record, recording and record- any device including tape now or hereafter known used for the reproductions of sound by electrical mechanical, magnetic or other means. DOCUMENT 3

Master record-any device used as the mould or permanent manufacturing agent from which records can be manufactured.

Atlantic-Atlantic, its successors, lessees and licensees.

12. FAME warrants that FAME is free to enter into this Agreement and has the right to grant Atlantic all of the rights herein granted, and that no prior contract or agreement of any kind entered into by FAME or by the Artist nor any prior performances by FAME or by the Artist, other than those prior contracts, agreements or performances of which Atlantic has been given written notice at the time of the execution hereof, will interfere in any manner with the complete performance of this Agreement by Atlantic, FAME or Artist

13. FAME agrees to indemnify Atlantic and hold Atlantic harmless from and against all liability, loss, damage, cost or expense, including reasonable legal' fees, paid or incurred by Atlantic by reason of any breach or failure of FAME's covenants or warranties hereunder. Pending the determination of any claim involving such breach or failure of FAME, Atlantic may withhold payments hereunder in an amount reasonably related to the value of such claim

14. With respect to any musical composition embodied in records released by Atlantic hereunder which are written, owned or controlled by FAME directly or indirectly, FAME shall cause a mechanical license to be issued to At-

-5-

lantic in the United States for each such musical composi-
tion at not more than two (2¢) cents per composition for
each record for which royalties are payable to FAME
hereunder.

15.   FAME agrees to execute and to promptly
cause Artist to execute the guarantee agreement annexed
hereto and made a part hereof and to promptly deliver same
to Atlantic.

16.   Atlantic agrees to pay to FAME within ten
days after the execution of this agreement and no later
than ten days after the commencement of each option period
for which Atlantic has exercised its option the sum of
Fifty thousand dollars ($50,000.00). Each such payment by
Atlantic shall constitute an advance against and shall be
fully recoupable by Atlantic out of any and all royalties
thereafter becoming payable to FAME from Atlantic in
respect of recordings by the Artist.

17.   (a)   FAME shall have the right to approve
the final acetate master and test pressing for each record
embodying only Artist's performances released by Atlantic
in the United States pursuant to this Agreement.

(b)   FAME shall have the right to approve
the art work for the cover and the liner notes for each
12 inch 33 1/3 RPM long play record embodying only
Artist's performances released by Atlantic in the United
States pursuant to this Agreement. Atlantic agrees to
consult with FAME regarding the creation of such art work
and liner notes.

-6-

(d)  Atlantic agrees to service its mailing
list of college radio stations and FM radio stations with
sample copies of long play records subject to this agreement

18.  Atlantic shall not be in default of any of its
obligations pursuant to this Agreement unless and until
FAME has given Atlantic written notice of such default and
Atlantic has failed to cure such default within thirty (30)
days after receipt of such notice

19.  All Master recordings embodying Artist's per-
formances delivered by FAME to Atlantic prior to the date
hereof are acknowledged to be subject to prior agreements
between FAME and Atlantic and shall continue to be governed
by such prior agreements, except that said masters will be
subject to repurchase as provided in Exhibit "A" hereof.

20.  This agreement is the entire agreement between
the parties and may not be modified except in writing signed
by the party to be charged.  This agreement shall be bind-
ing upon the parties hereto and their respective successors
and assigns.  No party except Atlantic shall have the right
to assign this agreement or any rights or obligations here-
under contained shall prevent the assignment by FAME of the
right to receive monies pursuant to this agreement, provided
that such assignees shall specifically agree that such ass-
ignment shall be subject to all of the terms, conditions,
specifications, and limitations of this agreement, and any
assignment in violation hereof shall be null and void and
shall convey no interest or affect any obligation hereunder
to Atlantic.  This agreement shall be construed in accordance
with and shall be subject to the laws of the State of New
York applicable to agreements made and to be wholly performed
therein.  Illegality or unenforceability of any portion here-

-7-

of shall not affect the legality or enforceability of the balance of this agreement

   IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

DOCUMENT 3

ATLANTIC RECORDING CORPORATION

By _____

FAME PRODUCTIONS, INC.

By _____

FAME PRODUCTIONS, INC.
603 E. Avalon Avenue
Muscle Shoals, Alabama   35660

Dear Sirs:

This letter will set forth and constitute a binding agreement between you (seller) and us (purchaser).

1.  (a)  Seller represents and warrants that seller shall be the sole and exclusive owner, free of any adverse claims, of the entire right, title and interest including all copyrights and all property rights in and to the master recordings embodying performances by Clarence Carter, (all of such master recordings, subject and becoming subject to this agreement hereinafter being referred to as the "Masters"), and in and to the performances embodied thereon for the entire world.

(b)  Seller further represents and warrants that the Masters and the performances embodied thereon will be produced in all respects in accordance with the rules and regulations of the American Federation of Musicians and all other Unions having jurisdiction; that Seller has the entire right and authority to enter into and to perform this agreement and all parts thereof; that Seller has not granted, nor has Seller done or permitted others to do, nor will Seller do or permit others to do any acts or things which would be in derogation of the absolute title or any of the rights herein granted to Purchaser, that Seller has not made nor will Seller make any grants of rights or permit the making of any grant of rights herein granted to any one other than Purchaser that neither the performances embodied thereon nor any use thereof by Purchaser or its grantees will violate or infringe upon the rights of any third party.

(2)  Seller hereby sells, assigns and transfers to  Purchaser without any limitations or restrictions whatsoever not specifically set forth herein, the entire right, title and interest in and to each of the Masters and in and to each of the performances embodied thereon Seller further grants to Purchaser absolutely all of Seller's rights and privileges to use the names, professional names, biographies and likenesses of all artists whose performances are embodied on the Masters, and all other rights, privileges and interests now known or hereafter to come into existence, now or hereafter owned or controlled by Seller which pertain to, have any commercial effect upon or are derived from the Masters and the performances embodies thereon.

(3)  In full consideration for the agreement herein, Purchaser agrees to pay to Seller

(a)  A sum equal to twelve (12%) per cent of the suggested retail list price for 90% of all records manufactured from the Masters and sold and paid for within the United States and not returned.  Such suggested retail list prices which are subject to change without notice are presently as follows: Singles-$.94, LPs-$ 4.98, Eight Track Cartridge at $ 6.95.

(b)  A sum equal to one-half of the percentage set forth in paragraph 3 (a) of the suggested retail list price for 90% of all records manufactured from the Masters and sold outside of the United States for which Purchaser is paid. Such sums shall be payable by Purchaser after Purchaser received payment in the United States  in United States currency and shall be accrued at the same rate of exchange as received

EXHIBIT "A"

by Purchaser.

(c)   The percentage on records sold through mail order or "clubs" plans shall be five (5%) percent of the suggested retail list price for Ninety (90%) percent of such records manufactured and sold.  No royalties shall be payable on "free" or "bonus" records given to members and other participants in any such "clubs". For records sold other than through our normal distribution channels (e.g., records sold for use as preium or promotional merchandise),the price received by us for such records shall be deemed to be the retail price, and the foregoing percentage shall be applied thereto.

(d)   In the event that Masters subject hereto are coupled or released together with Masters not subject hereto (hereafter called "conglomerate records"),  the percentage payable on such records will be reduced in that proportion as the number of Masters subject hereto embodied therein bears to the total number of masters embodied therein.  Any thing to the contrary herein contained not withstanding a Master embodying performances by Artist shall not be used in a conglomerate record in the United States until at least six months after the initial release thereof and no more than two masters by artist shall be in any one conglomerate record released in the United States.

(e)   Retail list price is hereby defined as being the suggested retail list price in the United States for records sold in the United States.  For records sold outside of the United States, the suggested retail list price is hereby defined as the retail list price in the country of sale.  The suggested retail list price shall be reduced by taxes, if any, which were actually imposed and duties, if any which are actually paid, and Purchasers' deductions in respect of packaging, which deductions shall in no event be more than 50¢ per LP album and $ 1.25 per pre-recorded tape.

(f)   No sums shall be payable in respect of any records given away for promotional purposes to promote Masters by artist or sold at less than Purchasers' cost therefor or for "cutouts".   No sums shall be payable for recordssold at less than Purchasers's standard wholesale list price in order to effectuate a discount from such standard wholesale list price.

(g)   Purchaser shall have the right to hold reasonable self-liquidating reserves to provide for returns. Purchasers's present normal policy is to utilize a 25% reserve system.

4.   Payments of all sums to Seller shall be made quarterly within sixty (60) days following the calendar quarters ending March 31, June 30, September 30 and December 31, and shall be accompanied by a statement setting forth the computation of such sums.  Unless Seller objects in writing, to any xxxxxxxxxxxxxxx such statement or payment, within one (1) year after Seller's receipt thereof, said statement shall be deemed finally binding upon Seller. Purchaser shall keep a single account for all recordings subject to this and prior agreements between the parties relating to Master recordings by Clarence Carter.

-2-

5. Anything to the contrary herein contained notwithstanding, Seller shall have the right to repurchase from Purchaser each of the master recordings delivered to Purchaser on Clarence Carter in the following manner and subject to the following terms and conditions:

(a) Seller shall have the right to repurchase with respect to any given master two years after the initial release thereof or upon the expiration of this agreement, whichever is later. If the same master is included in more than one recording (other than a conglomerate record) and the second such recording is a long play album, the date of release of the second recording shall govern.

(b) Seller shall exercise such right by giving Purchaser sixty (60) days prior written notice of Seller's election to exercise such right and by paying Seller the sum of one ($1.00) dollar per master.

(c) Notwithstanding Seller's repurchase of any Master recording.

(i) Purchaser shall have the right to dispose of all inventories thereof.

(ii) Such repurchase shall be subject to the rights of bonafide third party Purchaser for club, foreign and tape rights.

(iii) Purchaser shall have a non-exclusive license to use all of such masters in conglomerate records thereto for or thereafter released by Purchaser subject to the limitations and royalties herein provided for.

Very truly yours,

ATLANTIC RECORDING CORPORATION

By _____

Agreed:

FAME PRODUCTIONS, INC.

By _____

RIDER TO AGREEMENT BETWEEN FAME PRODUCTIONS, INC.
and CLARENCE CARTER  -  MARCH 5, 1969

          Company shall have the right to secure insurance
with respect to Artist for its own benefit.  In this
connection, Artist agrees to make himself available for
physical examinations by a physician as and when reasonably
requested by Company and agrees to complete such question-
naires as Company or any insurance carrier may from time to
time require in connection with securing and maintaining such
insurance.

                              FAME PRODUCTIONS, INC.

                              by: _____

Witnessed the mark of
Clarence Carter and
the execution by him
of this Rider after
every word of same was
read to him: _____

_____                    _____
                                             Clarence Carter
_____

ELECTRONICALLY FILED
5/26/2020 12:38 PM
20-CV-2020-900129.00
CIRCUIT COURT OF
COLBERT COUNTY, ALABAMA
MARK R. EADY, CLERK

# Exhibit 2

| ARTIST | TITLE | LABEL | DISTRIBUTOR | ALBUM # | *RECORD DATE | 45# | TAPE LOCATION |
|--------|-------|-------|-------------|---------|-------------|-----|---------------|
| CLARENCE CARTER | BACK DOOR SANTA | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | 45-2576 | VAULT |
| CLARENCE CARTER | BAD NEWS | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | ST-A-691617( | VAULT |
| CLARENCE CARTER | C.C. BLUES | ATLANTIC | ATLANTIC | SD-8267 | Jan-70 | | VAULT |
| CLARENCE CARTER | CHANGES | ATLANTIC | ATLANTIC | SD-8267 | Sep-69 | | VAULT |
| CLARENCE CARTER | DEVIL WOMAN | ATLANTIC | ATLANTIC | | Sep-69 | 45-2726 | VAULT |
| CLARENCE CARTER | DO WHAT YOU GOTTA DO | ATLANTIC | ATLANTIC | SD-8192 | Jan-68 | | VAULT |
| CLARENCE CARTER | DOIN' OUR THING | ATLANTIC | ATLANTIC | SD-8238 | Jan-69 | AT-2660 | VAULT |
| CLARENCE CARTER | FUNKY FEVER | ATLANTIC | ATLANTIC | SD-8192 | | | VAULT |
| CLARENCE CARTER | GETTING THE BILLS (BUT NO MERCHANDISE) | ATLANTIC | ATLANTIC | SD-8267 | Jan-70 | 45-2801 | VAULT |
| CLARENCE CARTER | HARPER VALLEY PTA | ATLANTIC | ATLANTIC | SD-8199 | Nov-68 | | VAULT |
| CLARENCE CARTER | I CAN'T DO WITHOUT YOU | ATLANTIC | ATLANTIC | SD-8238 | Jan-69 | ST-A-691617( | VAULT |
| CLARENCE CARTER | I CAN'T LEAVE YOUR LOVE ALONE | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | 45-2642 | VAULT |
| CLARENCE CARTER | I CAN'T SEE MYSELF | ATLANTIC | ATLANTIC | 45-2461 | Jan-68 | SD-8192 | VAULT |
| CLARENCE CARTER | I'M JUST A PRISONER | ATLANTIC | ATLANTIC | SD-8267 | Jul-70 | | VAULT |
| CLARENCE CARTER | I'M QUALIFIED | ATLANTIC | ATLANTIC | SD-8192 | | | VAULT |
| CLARENCE CARTER | INSTANT REACTION | ATLANTIC | ATLANTIC | SD-8238 | Jan-69 | | VAULT |
| CLARENCE CARTER | IT'S ALL IN YOUR MIND | ATLANTIC | ATLANTIC | SD-8267 | Jul-70 | | VAULT |
| CLARENCE CARTER | LET IT BE | ATLANTIC | ATLANTIC | SD-8267 | Jan-70 | | VAULT |
| CLARENCE CARTER | LET ME COMFORT YOU | ATLANTIC | ATLANTIC | SD-8199 | Sep-68 | 45-2569 | VAULT |
| CLARENCE CARTER | LIGHT MY FIRE | ATLANTIC | ATLANTIC | SD-8199 | Nov-68 | | VAULT |
| CLARENCE CARTER | LONESOMEST LONESOME | ATLANTIC | ATLANTIC | | Sep-72 | 45-2875 | VAULT |
| CLARENCE CARTER | LOOK WHAT I GOT | ATLANTIC | ATLANTIC | SD-8199 | Sep-68 | | VAULT |
| CLARENCE CARTER | LOOKIN' FOR A FONA | ATLANTIC | ATLANTIC | SD-8192 | | 45-2461 | VAULT |
| CLARENCE CARTER | MAKING LOVE(AT THE DARK END OF THE STR | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | ST-A-691617( | VAULT |
| CLARENCE CARTER | PART TIME LOVE | ATLANTIC | ATLANTIC | SD-8192 | Jan-68 | | VAULT |
| CLARENCE CARTER | PATCHES | ATLANTIC | ATLANTIC | SD-8267 | | AT-2748 | VAULT |
| CLARENCE CARTER | SAY IT ONE MORE TIME | ATLANTIC | ATLANTIC | AT-2748 | Aug-70 | | VAULT |
| CLARENCE CARTER | SAY MAN | ATLANTIC | ATLANTIC | SD-8267 | Jan-70 | | VAULT |
| CLARENCE CARTER | SCRATCH MY BACK MUMBLE IN MY EAR | ATLANTIC | ATLANTIC | | Jun-71 | 45-2842 | VAULT |
| CLARENCE CARTER | SET ME FREE | ATLANTIC | ATLANTIC | SD-8192 | Jan-68 | | VAULT |
| CLARENCE CARTER | SLIP AWAY | ATLANTIC | ATLANTIC | SD-8192 | | | VAULT |
| CLARENCE CARTER | SLIPPED, TRIPPED AND FELL IN LOVE | ATLANTIC | ATLANTIC | | | 45-2818 | VAULT |
| CLARENCE CARTER | SLIPPIN' AROUND | ATLANTIC | ATLANTIC | SD-8192 | Jan-68 | | VAULT |
| CLARENCE CARTER | SNATCHING IT BACK | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | AT-2605 | VAULT |
| CLARENCE CARTER | SOUL DEEP | ATLANTIC | ATLANTIC | SD-8238 | Jan-69 | | VAULT |
| CLARENCE CARTER | STEAL AWAY | ATLANTIC | ATLANTIC | SD-8199 | Sep-68 | | VAULT |
| CLARENCE CARTER | TAKE IT OFF HIM | ATLANTIC | ATLANTIC | 2702 | Apr-69 | 45-2702 | VAULT |
| CLARENCE CARTER | THAT OLD TIME FEELING | ATLANTIC | ATLANTIC | SD-8199 | Jan-69 | AT-2576 | VAULT |
| CLARENCE CARTER | THE FEELING IS RIGHT | ATLANTIC | ATLANTIC | 45-2642 | Apr-69 | SD-8238 | VAULT |
| CLARENCE CARTER | THE FEW TROUBLES I'VE HAD | ATLANTIC | ATLANTIC | | | AT-2702 | VAULT |
| CLARENCE CARTER | THINK ABOUT IT | ATLANTIC | ATLANTIC | SD-8199 | Sep-68 | | VAULT |
| CLARENCE CARTER | TILL I CAN'T TAKE IT ANYMORE | ATLANTIC | ATLANTIC | SD-8267 | Jul-70 | | VAULT |
| CLARENCE CARTER | TOO WEAK TO FIGHT | ATLANTIC | ATLANTIC | SD-8199 | Sep-68 | 45-2569 | VAULT |
| CLARENCE CARTER | WEEKEND LOVE | ATLANTIC | ATLANTIC | SD-8199 | Nov-68 | | VAULT |
| CLARENCE CARTER | WILLIE AND LAURA MAE JONES | ATLANTIC | ATLANTIC | SD-8267 | Jul-70 | | VAULT |
| CLARENCE CARTER | WIND IT UP | ATLANTIC | ATLANTIC | SD-8192 | Jan-68 | | VAULT |
| CLARENCE CARTER | YOU CAN'T MISS WHAT YOU CAN'T MEASURE | ATLANTIC | ATLANTIC | SD-8238 | Apr-69 | ST-A-691617( | VAULT |
| CLARENCE CARTER | YOU'VE BEEN A LONG TIME COMING | ATLANTIC | ATLANTIC | SD-8199 | Nov-68 | | VAULT |
| CLARENCE CARTER | YOUR LOVE LIFTED ME | ATLANTIC | ATLANTIC | SD-8267 | Jan-70 | | VAULT |
| CLARENCE CARTER | I SMELL A RAT | ATLANTIC | ATLANTIC | SD-8238 | Nov-68 | AT-2660 | VAULT |
| CLARENCE CARTER | THE COURT ROOM | ATLANTIC | ATLANTIC | 45-2801 | Apr-71 | | VAULT |
| CLARENCE CARTER | DON'T MAKE MY BABY CRY | FAME | ATCO | FM-12021-PL | | 45-1013 | VAULT |
| CLARENCE CARTER | I'D RATHER GO BLIND | FAME | ATCO | SD-8199 | Nov-68 | 45-1010 | VAULT |
| CLARENCE CARTER | SHE AIN'T GONNA DO RIGHT | FAME | ATCO | SD-8192 | Jan-68 | 45-1016 | VAULT |
| CLARENCE CARTER | TELL DADDY | FAME | ATCO | FM-10902 | | 45-1010 | VAULT |
| CLARENCE CARTER | THE ROAD OF LOVE | FAME | ATCO | SD-8199 | Nov-68 | 45-1016 | VAULT |
| CLARENCE CARTER | THREAD THE NEEDLE | FAME | ATCO | FM-12020-PL | | 45-1013 | VAULT |

*=approximate



AlaFile E-Notice

20-CV-2020-900129.00

To:  G RICK HALL
     rhall@halltanner.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION
20-CV-2020-900129.00

The following complaint was FILED on 5/26/2020 12:38:58 PM

Notice Date:     5/26/2020 12:38:58 PM

MARK R. EADY
CIRCUIT COURT CLERK
COLBERT COUNTY, ALABAMA
P.O. BOX 740370
TUSCUMBIA, AL, 35674

256-386-8511
mark.eady@alacourt.gov



AlaFile E-Notice

20-CV-2020-900129.00

To:  ATLANTIC RECORDING CORPORATION
C/O CT CORPORATION SYSTEM
28 LIBERTY STREET
NEW YORK, NY, 10005

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION
20-CV-2020-900129.00

The following complaint was FILED on 5/26/2020 12:38:58 PM

Notice Date:     5/26/2020 12:38:58 PM

MARK R. EADY
CIRCUIT COURT CLERK
COLBERT COUNTY, ALABAMA
P.O. BOX 740370
TUSCUMBIA, AL, 35674

256-386-8511
mark.eady@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>20-CV-2020-900129.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA
### FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION

**NOTICE TO:** ATLANTIC RECORDING CORPORATION, C/O CT CORPORATION SYSTEM 28 LIBERTY STREET, NEW YORK, NY 10005

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), G RICK HALL

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: 201 SOUTH COURT STREET, SUITE 320, FLORENCE, AL 35630

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of FAME ENTERPRISES, INC.
pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

| 05/26/2020 | /s/ MARK R. EADY | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.        /s/ G RICK HALL

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
*(Name of Person Served)*      *(Name of County)*

Alabama on _____.
*(Date)*

_____   _____
*(Type of Process Server)*        *(Server's Signature)*

_____
*(Address of Server)*

_____
*(Server's Printed Name)*

_____
*(Phone Number of Server)*

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

# OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*

☐ Return Receipt (hardcopy)          $ _____

☐ Return Receipt (electronic)        $ _____

☐ Certified Mail Restricted Delivery  $ _____

☐ Adult Signature Required           $ _____

☐ Adult Signature Restricted Delivery $ _____

Postage

$

Total Postage and Fees

$

Postmark
Here

TUSCUMBIA, AL 35674

MAY 26 2020

USPS

Sent To  atlantic Recording

Street and Apt. No., or PO Box No.  CU00  900129  DOB1

City, State, ZIP+4®

2445 5436 1691 0000 1120 6019 7017

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

SENDER: *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATLANTIC RECORDING CORPORATION
C/O CT CORPORATION SYSTEM
28 LIBERTY STREET
NEW YORK, NY 10005



9590 9402 4477 8248 0686 95

2. Article Number *(Transfer from service label)*

7019 1120 0002 1636 5662

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ~~RECEIVED~~

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

UTEC

C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

WavgolaV DOI

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LEIGH ...
MARK R.
CUIT COU

2020 JUN 15   PM 12: 45

Mark R. Eady
Circuit Clerk
Colbert County Courthouse
P.O. Box 740370
Tuscumbia, AL 35674

USPS TRACKING #

9590 9402 4477 8248 0686 95

United States
Postal Service



AlaFile E-Notice

20-CV-2020-900129.00

Judge: JACQUELINE M. HATCHER

To: HALL GREGORY RICK
rhall@halltanner.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION
20-CV-2020-900129.00

The following matter was served on 6/10/2020

**D001 ATLANTIC RECORDING CORPORATION**
**Corresponding To**
CERTIFIED MAIL

MARK R. EADY
CIRCUIT COURT CLERK
COLBERT COUNTY, ALABAMA
P.O. BOX 740370
TUSCUMBIA, AL, 35674

256-386-8511
mark.eady@alacourt.gov



AlaFile E-Notice

20-CV-2020-900129.00

Judge: JACQUELINE M. HATCHER

To:  TANNER JAMES MICHAEL
     mtanner@halltanner.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION
20-CV-2020-900129.00

The following matter was served on 6/10/2020

**D001 ATLANTIC RECORDING CORPORATION**
**Corresponding To**
CERTIFIED MAIL

MARK R. EADY
CIRCUIT COURT CLERK
COLBERT COUNTY, ALABAMA
P.O. BOX 740370
TUSCUMBIA, AL, 35674

256-386-8511
mark.eady@alacourt.gov



AlaFile E-Notice

20-CV-2020-900129.00

Judge: JACQUELINE M. HATCHER

To:  HARGETT DOUGLAS BARKLEY
     dhargett@halltanner.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF COLBERT COUNTY, ALABAMA

FAME ENTERPRISES, INC. V. ATLANTIC RECORDING CORPORATION
20-CV-2020-900129.00

The following matter was served on 6/10/2020

**D001 ATLANTIC RECORDING CORPORATION**
**Corresponding To**
CERTIFIED MAIL

MARK R. EADY
CIRCUIT COURT CLERK
COLBERT COUNTY, ALABAMA
P.O. BOX 740370
TUSCUMBIA, AL, 35674

256-386-8511
mark.eady@alacourt.gov